# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question *(U.S. Government Not a Party)*
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.** **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ESCO Advisors, LLC<br>　　　　　　　　Plaintiff<br>v.<br><br>Eligo Energy, LLC,<br>VIR Technologies, LLC,<br>I2R Holdings, LLC,<br>Mark Friedgan, and<br>Alex Goldstein<br>　　　　　　　　Defendants | Case No.<br><br><br><br><br><br><br><br>December 5, 2017 |

# COMPLAINT

## PARTIES

1.　Plaintiff, ESCO Advisors, LLC ("ESCO"), is a limited liability company organized and existing under the laws of the State of Connecticut.

2.　Upon information and belief, defendant, Eligo Energy, LLC ("Eligo"), is a limited liability company organized and existing under the laws of the State of Delaware, and maintains a principal office located at 201 W. Lake Street, Ste. 151, Chicago, Illinois.

3.　Upon information and belief, defendant, VIR Technologies, LLC ("VIR"), is a limited liability company organized and existing under the laws of the State of Delaware, and maintains a principal office located at 201 W. Lake Street, Ste. 151, Chicago, Illinois.

4.　Upon information and belief, defendant, I2R Holdings, LLC ("I2R"), is a limited liability company organized and existing under the laws of the State of Delaware, and maintains a principal office located at 201 W. Lake Street, Ste. 151, Chicago, Illinois.

5.　Upon information and belief, defendant, Mark Friedgan ("Friedgan"), is an individual with a principal residence located in the state of Illinois.

6. Upon information and belief, defendant, Alex Goldstein ("Goldstein"), is an individual with a principal residence located in state of Illinois.

7. Upon information and belief, Friedgan and/or Goldstein are members and/or managers of I2R.

8. Upon information and belief, I2R is a member and/or manager of Eligo and VIR.

## JURISDICTION

9. This Court has jurisdiction pursuant to 28 U.S.C. §1332.

## VENUE

10. Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

## FACTUAL BACKGROUND

11. ESCO develops and licenses proprietary software to the retail energy sector, and provides related consulting services to its national clients.

12. On or about June 26, 2012, Eligo executed a Nondisclosure Agreement with ESCO (the "Eligo NDA"), and thereafter became a customer of ESCO.

13. In or around October, 2012, Eligo executed a Consulting & Services Agreement with ESCO, which was later amended by way of a Consulting & Services Agreement dated June 12, 2015, and again amended by way of an Addendum to Consulting & Services Agreement dated August 21, 2017 (collectively the "Eligo Consulting Agreement").

14. In becoming a customer of ESCO, and upon execution of the Eligo NDA and the Eligo Consulting Agreement, Eligo, Friedgan and Goldstein gained access and use of ESCO's full suite of risk management software products and services, which ESCO developed and use to manage the supply function of a retail energy provider, provide pricing to its customers, and comply with counterparty obligations.

2

15. At some time between October 1, 2012 and December 31, 2013, Friedgan and Goldstein invested monies into ESCO, and were elected to ESCO's Board of Managers. As a result, each were given both a voting interest and membership interest in ESCO.

16. As members of the Board of Managers, and as a result of holding voting and membership interests, Friedgan and Goldstein were granted greater access to ESCO's proprietary intellectual property, including but not limited to its software packages' source code, pricing models, consulting services and client/industry contact database (collectively the "ESCO Property").

17. Specifically, Friedgan and Goldstein were granted access to the following ESCO Property that they would not have otherwise had access to as mere customers of ESCO:

   a. Market data;

   b. Target market segments;

   c. Sales presentations;

   d. Product differentiation;

   e. Customer sales queue;

   f. Marketing plans;

   g. Financial forecasts;

   h. Technology plans;

   i. Technology development plans;

   j. Pricing strategies; and

   k. Business structure and organizational data.

**Greene Law, P.C.** | 11 Talcott Notch Road | Farmington, CT 06032
Tel: 860-676-1336 | Fax: 860-676-2250 | E-Service: service@greenelawpc.com

18. In or around June, 2017, ESCO entered into negotiations with Cognitive Energy, LLC ("Cognitive"), wherein Cognitive originally agreed to purchase substantially all the assets of the company for the sum of $8,500,000.00.

19. During the due diligence process, it was discovered that at some point in time between 2012 and 2015, Friedgan and/or Goldstein and/or Eligo had reverse engineered the ESCO Property, and transferred the tables, know-how, data and formulas to VIR, another company owned and/or operated by Friedgan, Goldstein and/or I2R.

20. Thereafter, Friedgan and/or Goldstein and/or VIR developed their own pricing models using the formulas and other proprietary information and methods derived from reverse engineering the ESCO Property (the "VIR Software").

21. Upon information and belief, VIR, which is controlled, at least partially, by Friedgan and Goldstein, licenses or sells the VIR Software to third party customers.

22. Prior to closing on the sale of its assets to Cognitive, ESCO requested its principals to execute restrictive agreements to protect the integrity of the ESCO Property.

23. Eligo refused to execute the restrictive agreement used with and executed by every other ESCO principal, and demanded a more permissive agreement be drafted.

24. Upon information and belief, Eligo refused to sign the standard restrictive agreement due to its, Friedgan's and Goldstein's intent to market, sell, license or otherwise use and profit from the VIR Software, and intent to directly compete with ESCO and Cognitive.

25. As a result of the development of the VIR Software using information disseminated from reverse engineering the ESCO Property, and Eligo's refusal to sign the same restrictive agreement as each of ESCO's other customers, the value of ESCO diminished and the final

**Greene Law, P.C.** | 11 Talcott Notch Road | Farmington, CT 06032
Tel: 860-676-1336 | Fax: 860-676-2250 | E-Service: service@greenelawpc.com

purchase price for ESCO's assets was reduced to $7,850,000.00 as memorialized in ESCO and Cognitive's Purchase and Sale Agreement dated September 12, 2017 ("ESCO P&S").

26. Upon information and belief, Friedgan, Goldstein, Eligo, I2R and/or VIR continue to market and license the VIR Software to customers that would have otherwise engaged the services of ESCO, given the uniqueness and proprietary nature of the ESCO Property.

27. Upon information and belief, Friedgan, Goldstein and/or I2R are actively marketing the sale of Eligo and/or VIR, and expect to earn a profit from said sale.

### COUNT ONE: BREACH OF CONTRACT (Eligo NDA and Eligo Consulting Agreement) (As to Eligo)

28. The allegations contained in paragraphs 1-27 are hereby incorporated by reference and made a part hereof.

29. The Eligo NDA prohibits the transmittal, dissemination or distribution of ESCO's proprietary data to third parties.

30. The Eligo Consulting Agreement states in Section 8(c) thereof that, *inter alia*, Eligo:

   a. agrees not to make the ESCO Data available, in whole or in part, to any third party;

   b. agrees not to interfere with or disrupt the integrity or performance of the ESCO Property; and

   c. agrees not to attempt to gain unauthorized access to the ESCO Property.

31. Pursuant to Section 9(c) of the Eligo Consulting Agreement, Eligo agreed to not:

   a. Directly or indirectly license, sublicense, sell, resell, transfer, assign, distribute or otherwise commercially exploit or make available to any third party the ESCO Property;

   b. Modify, copy or create derivative works based on the ESCO Property;

5

**Greene Law, P.C.** | 11 Talcott Notch Road | Farmington, CT 06032
Tel: 860-676-1336 | Fax: 860-676-2250 | E-Service: service@greenelawpc.com

    c.   Disassemble, reverse engineer or decompile the ESCO Property; and

    d.   Build a competitive product or service, or build a product or service using similar ideas, features, functions or graphics as the ESCO Property.

32.    The acts of reverse engineering the ESCO Property, effectively stealing ESCO's proprietary data, and then transferring the reverse engineered information to VIR, constitute a breach of the terms of the Eligo NDA and Eligo Consulting Agreement.

33.    As a result of Eligo's breach of the Eligo NDA and Consulting Agreement, ESCO is entitled to damages, in addition to reasonable attorney's fees and costs.

**COUNT TWO: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(As to Friedgan and Goldstein)**

34.    The allegations contained in paragraphs 1-32 are hereby incorporated by reference and made a part hereof.

35.    Any newly admitted member to a limited liability company, who is admitted in accordance with the terms of a written operating agreement, is deemed to assent to the terms of the operating agreement pursuant to Conn. Gen. Stat. §34-243e(b).

36.    As members of ESCO, Friedgan and Goldstein are thus bound by the terms, conditions and provisions as set forth in ESCO's Fifth Amended and Restated Limited Liability Company Operating Agreement dated October 21, 2016 (the "Operating Agreement").

37.    Implied in every written agreement is a covenant of good faith and fair dealing.

38.    Given the sensitive, confidential and proprietary nature of its business, software suite, data and methods, ESCO reasonably believed Friedgan and Goldstein, as members of the company, would act in good faith and with reasonable care in their handling of the ESCO Property.

**Greene Law, P.C.** | 11 Talcott Notch Road | Farmington, CT 06032
Tel: 860-676-1336 | Fax: 860-676-2250 | E-Service: service@greenelawpc.com

39. In causing or otherwise allowing the ESCO Property to be reverse engineered, effectively stealing ESCO's data, and by causing or otherwise allowing the stolen, reverse engineered information to be transmitted to VIR, Friedgan and Goldstein acted in bad faith and launched an attack on the very heart of ESCO's business model and target market, and engaged in conduct which caused ESCO irreparable harm.

40. Friedgan and Goldstein have breached their duty of good faith and fair dealing owed to ESCO, and as a result, ESCO claims damages in an amount to be determined at trial, including attorney's fees and costs.

## COUNT THREE: BREACH OF FIDUCIARY DUTY
### (As to Friedgan and Goldstein)

41. The allegations contained in paragraphs 1-39 are hereby incorporated by reference and made a part hereof.

42. As members of ESCO, as well as members of the Board of Managers, Friedgan and Goldstein owed a fiduciary duty to the company to protect its sensitive, confidential and proprietary information, and to not release said information outside of the confines of the company.

43. Friedgan and Goldstein owed a duty to ESCO to not take any actions which would adversely impact or impair ESCO's market share, acquisition of future customers, value, profitability, integrity and relationship with its clients.

44. Said duties include, but are not limited to, not reverse engineering the ESCO Property, not establishing a competitor company and software package, not stealing ESCO's property, not directly or indirectly competing with ESCO's market share and targeting potential future customers, and not taking any actions which would benefit themselves, directly or indirectly, to the detriment of ESCO.

**Greene Law, P.C.** | 11 Talcott Notch Road | Farmington, CT 06032
Tel: 860-676-1336 | Fax: 860-676-2250 | E-Service: service@greenelawpc.com

45. In causing or otherwise allowing the ESCO Property to be reverse engineered, causing or otherwise allowing the reverse engineered information to be stolen and transmitted to VIR, by causing or otherwise allowing VIR to develop its own VIR Software and directly compete with ESCO's business, and by refusing to sign the same restrictive agreement as other principals of ESCO, Friedgan and Goldstein acted in bad faith and breached their fiduciary obligations owed to the company.

46. As a result of Friedgan and Goldstein's breach of their fiduciary obligations owed to ESCO, the company suffered damages in the amount of $650,000.00, which represents the reduction in purchase price paid by Cognitive.

## COUNT FOUR: TORTIOUS INTERFERRENCE
### (As to All Defendants)

47. The allegations contained in paragraphs 1-39 are hereby incorporated by reference and made a part hereof.

48. Given the unique and proprietary nature of the ESCO Property, the VIR Software could not have been developed, marketed and made profitable in the manner which and to the extent it is but for the act of reverse engineering the ESCO Property.

49. But for the development of the VIR Software, it is reasonably probable the customers procured by VIR would have been customers of ESCO.

50. In causing or otherwise allowing the ESCO Property to be reverse engineered, causing or otherwise allowing the reverse engineered information to be transmitted to VIR, and by causing or otherwise allowing VIR to develop its own VIR Software and directly compete with ESCO's business, the Defendants tortuously interfered with ESCO's business relationships and expectancies.

**Greene Law, P.C.** | 11 Talcott Notch Road | Farmington, CT 06032
Tel: 860-676-1336 | Fax: 860-676-2250 | E-Service: service@greenelawpc.com

51. ESCO has been damaged in an amount equal to any revenues earned by VIR on account of the VIR Software, and future profits from customers that would have been acquired by ESCO.

**COUNT FIVE: FRAUD**
**(As to Friedgan, Goldstein and Eligo)**

52. The allegations contained in paragraphs 1-50 are hereby incorporated by reference and made a part hereof.

53. In becoming members of ESCO, and in becoming members of the Board of Managers, and, during the sale process with Cognitive, Friedgan, Goldstein and Eligo actually or, through their actions, implicitly represented and caused ESCO to believe they would not take any actions which would benefit themselves to the detriment of ESCO.

54. During negotiations with Cognitive, Eligo, through Friedgan and Goldstein, requested a new and more favorable consultation agreement be executed between Eligo and ESCO, and as consideration for the more favorable terms, Eligo, Friedgan and Goldstein represented they would cooperate with and work to facilitate the transaction with Cognitive.

55. Friedgan, Goldstein and Eligo knew these actual and/or implied statements were untrue when made as, at that time, they had already caused or allowed the ESCO Property to be reverse engineered and/or stolen, and intended to directly compete with ESCO.

56. Friedgan, Goldstein and Eligo made these actual and/or implied statements with the intent of inducing ESCO to enter into a less restrictive agreement during the sales process with Cognitive.

57. ESCO relied on these actual and/or implied statements, and did enter into a less restrictive agreement, to its detriment.

**Greene Law, P.C.** | 11 Talcott Notch Road | Farmington, CT 06032
Tel: 860-676-1336 | Fax: 860-676-2250 | E-Service: service@greenelawpc.com

58. As a result, ESCO claims damages in an amount to be determined at trial.

## COUNT SIX: VIOLATION OF THE UNIFORM TRADE SECRETS ACT
### (Conn. Gen. Stat. §35-50, *et seq*)
### (As to All Defendants)

59. The allegations contained in paragraphs 1-57 are hereby incorporated by reference and made a part hereof.

60. Friedgan, Goldstein, Eligo, I2R and VIR are each a "person" as that term is defined under Conn. Gen. Stat. §35-51(c).

61. The ESCO Property constitutes a "trade secret" as that term is defined under Conn. Gen. Stat. §35-51(d).

62. Friedgan, Goldstein and Eligo's acquisition of the ESCO Property was done under circumstances requiring the maintenance of its secrecy and limited use.

63. Friedgan, Goldstein and Eligo's reverse engineering and/or theft of the ESCO Property constitutes a "misappropriation" as that term is defined under Conn. Gen. Stat. §35-51(b).

64. VIR's acquisition of the stolen, reverse engineered ESCO Property, and use of that property to develop, market and utilize the VIR Software constitutes a "misappropriation" as that term is defined under Conn. Gen. Stat. §35-51(b).

65. The Defendants' misappropriation of ESCO's trade secrets was willful and malicious.

66. The Defendants' actions, stated above, constitute a misappropriation of trade secrets in violation of Conn. Gen. Stat. §35-50, *et seq*, and as a result, ESCO claims damages including, but not limited to (1) an injunction from the further use, marketing, dissemination, sale, licensing of, and profiting from, the VIR Software; (2) actual damages resulting in the loss incurred by the development of the VIR Software; (3) punitive damages; and (4) attorney's fees.

## COUNT SEVEN: CIVIL THEFT
## (Conn. Gen. Stat. §52-564)
## (As to Friedgan, Goldstein and Eligo)

67. The allegations contained in paragraphs 1-66 are hereby incorporated by reference and made a part hereof.

68. Friedgan, Goldstein and Eligo reverse engineered the ESCO Property with the actual intent of depriving ESCO from the benefit of said property.

69. The actions of Friedgan, Goldstein and Eligo, described *supra*, constitute civil theft in violation of Conn. Gen. Stat. §52-564.

70. ESCO claims treble damages.

## COUNT EIGHT: CONVERSION
## (As to VIR)

71. The allegations contained in paragraphs 1-66 are hereby incorporated by reference and made a part hereof.

72. In receiving the reverse engineered ESCO Property, VIR has deprived ESCO of its property, and converted said property for its own use when it developed the VIR Software.

73. As a result, ESCO has suffered damages.

## COUNT NINE: UNJUST ENRICHMENT
## (As to All Defendants)

74. The allegations contained in paragraphs 1-72 are hereby incorporated by reference and made a part hereof.

75. The Defendants have benefitted from the reverse engineering of the ESCO Property, and the development, marketing, sale and licensing of the VIR Software.

76. Said benefit came at ESCO's detriment.

77. The Defendants failed to pay reasonable compensation for said benefit.

78. As a result, ESCO claims damages in an amount to be determined at trial.

## COUNT TEN: PIERCE THE CORPORATE VEIL
### (As to All Defendants)

79. The allegations contained in paragraphs 1-77 are hereby incorporated by reference and made a part hereof.

80. The foregoing conduct by the Defendants demonstrate Friedgan and Goldstein's complete dominance over the finances, business policies and practices of Eligo, I2R and VIR, as well as the use of such domination to cause Eligo, I2R and VIR to violate their respective legal duties and to commit certain unjust acts in contravention of ESCO's legal rights, thereby causing great financial harm to ESCO.

81. The foregoing conduct of the Defendants demonstrate that, at no time did the individual or business defendants have a separate mind or interests, and that the business defendants are mere alter egos of themselves, Friedgan and Goldstein.

82. Based upon the foregoing conduct of the Defendants, the corporate veil shielding their respective assets should be pierced, and each defendant should be found liable for all damages incurred by ESCO as a result of the claims made herein.

**Greene Law, P.C.** | 11 Talcott Notch Road | Farmington, CT 06032
Tel: 860-676-1336 | Fax: 860-676-2250 | E-Service: service@greenelawpc.com

**WHEREFORE**, Plaintiff claims:

1. Money damages;

2. Consequential damages;

3. Interest pursuant to Conn. Gen. Stat. §37-3a;

4. Punitive damages pursuant to Conn. Gen. Stat. §35-53;

5. Treble damages pursuant to Conn. Gen. Stat. §52-564;

6. Permanent injunction, enjoining Defendants from developing, marketing, selling, licensing, disseminating or otherwise using or profiting from the VIR Software pursuant to Conn. Gen. Stat. §35-53;

7. Attorney's fees pursuant to contract, common law fraud, and Conn. Gen. Stat. §35-53;

8. Costs; and

9. Such other and further relief that the Court deems just, proper and appropriate.

DATED: December 5, 2017                     ESCO Advisors, LLC

                                            By:    /s/ Gary J. Greene
                                                   Gary J. Greene, Esq. (ct09039)
                                                   Greene Law, P.C.
                                                   11 Talcott Notch Rd.
                                                   Farmington, CT 06032
                                                   860.676.1336 (t)
                                                   860.676.2250 (f)
                                                   Its Attorney
                                                   ggreene@greenelawpc.com

13

**Greene Law, P.C.** | 11 Talcott Notch Road | Farmington, CT 06032
Tel: 860-676-1336 | Fax: 860-676-2250 | E-Service: service@greenelawpc.com